**IN RE Anthony Scott JOSLIN, Debtor(s)**

**Bankruptcy Case No. 15–12376**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Signed January 25, 2016

Filed January 26, 2016

Attorney for Debtor: David A. Kruer, Esq.

Attorney for Sharefax Credit Union: Paul T. Saba, Esq.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO INCLUSION OF ATTORNEY'S FEES IN MORTGAGE ARREARAGE CLAIM AND OVERRULING, IN PART, SHAREFAX CREDIT UNION, INC.'S OBJECTION TO CONFIRMATION

Beth A. Buchanan, United States Bankruptcy Judge

The debtor in this case seeks to cure the arrearage on his residential mortgage through his chapter 13 plan and maintain the on-going monthly mortgage payments in accordance with § 1322(b)(5). The arrearage claim filed by the debtor's mortgage holder includes attorney fees stemming from prepetition foreclosure litigation. The chapter 13 trustee objects to the request for payment of prepetition attorney fees.

Pursuant to § 1322(e), the amount required to cure the arrearage on the debtor's mortgage is determined in accordance with the underlying agreement and applicable nonbankruptcy law. Relying on the reinstatement provision in the debtor's mortgage and an Ohio Supreme Court decision holding that a contract provision providing for recovery of attorney fees in connection with the reinstatement of a mortgage is enforceable under Ohio law, the mortgage creditor argues that the requested attorney fees are properly allowable. The chapter 13 trustee contends that prepetition attorney fees may not be

included in a mortgage arrearage claim based on a long line of bankruptcy cases holding that provisions for payment of attorney fees upon the default of a debt obligation are void as against public policy under Ohio law.

Concurring with the bankruptcy court in *In re Tudor*, 342 B.R. 540 (Bankr.S.D.Ohio 2005), this court finds that the cure of a mortgage arrearage through a chapter 13 plan is the not the equivalent of a contractual mortgage reinstatement. While the parties' contract and applicable nonbankruptcy law set the *amount* of an arrearage claim, the bankruptcy code prescribes a debtor's *right* to cure and maintain a mortgage in a chapter 13 plan. As such, the reinstatement provision in the mortgage is not operative in this bankruptcy case and provides no basis for the request for attorney fees in the arrearage claim.

## I. *Background*

Pursuant to his chapter 13 plan (the "*Plan*"), debtor Anthony Joslin (the "*Debtor*") proposes to cure the arrearage owed to Sharefax Credit Union, Inc. ("*Sharefax*") on his residential mortgage (the "*Mortgage*") and maintain the on-going monthly mortgage payments in accordance with § 1322(b)(5).[1] Sharefax filed a secured proof of claim in the amount of $173,358.82, which is broken down as follows:

|  | Arrearage | Due as of the Petition Date |
|---|---|---|
| Principal Balance |  | $142,459.64 |
| Delinquent Payments | $44,126.61 |  |
| Attorney Fees | $27,083.00 | $27,083.00 |
| Attorney Costs | $3,816.18 | $3,816.18 |
| **TOTAL** | **$75,025.79** | **$173,358.82** |

Proof of Claim Number 3–3. In an exhibit to its claim, Sharefax references paragraph 18 of the Mortgage regarding a borrower's right to reinstate the mortgage following default and the Ohio Supreme Court case of *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 906 N.E.2d 396 (Ohio 2009), which holds that provisions allowing for recovery of attorney fees in connection with a reinstatement of a mortgage are enforceable under Ohio law.

The chapter 13 trustee (the "*Trustee*") objected to Sharefax's claim, asserting that the $27,083 in attorney fees included in the prepetition arrearage claim should be disallowed. The Trustee argues that Ohio follows the "American Rule" regarding the recovery of attorney fees in civil litigation. Under the American Rule, each party is responsible for paying its own attorney fees. In support of her objection, the Trustee relies on the *Lake*[2]/*Landrum*[3] line of bankruptcy court decisions holding that all provisions in debt instruments for payment of attorney fees upon a debtor's default are void and unenforceable under Ohio law as against public policy. Relying on *In re Tudor*,[4] the Trustee

1. Unless otherwise indicated, the terms "Bankruptcy Code," "Section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

2. *In re Lake*, 245 B.R. 282 (Bankr.N.D.Ohio 2000).

3. *In re Landrum*, 267 B.R. 577 (Bankr. S.D.Ohio 2001).

4. *In re Tudor*, 342 B.R. 540 (Bankr.S.D.Ohio

further argues that even if Ohio law permits provisions for recovery of attorney fees in connection with the reinstatement of a mortgage, such fees are not recoverable under § 1322(e).

In its response, Sharefax focuses on the Trustee's *Lake/Landrum* argument asserting that *Wilborn*, as well as the earlier cases of *Davidson* [5] and *Mahaffey*, [6] recognize an exception to the American Rule where attorney fees are sought as a condition of reinstatement of a mortgage. Sharefax also argues that the Sixth Circuit's decision in *Tucker* [7] allows attorney fees to be included in prepetition arrearage claims.

Sharefax likewise objected to confirmation of the Debtor's Plan on the grounds that the Plan is not feasible when the full amount of its arrearage claim is included in the Plan. Alternatively, Sharefax argues that the Plan cannot be confirmed because it cannot be completed within the proposed approximate 51 month period even if attorney fees are excluded from Sharefax's allowed claim.

In its original response, Sharefax did not address *In re Tudor*. At this Court's request, the parties filed supplemental briefs. Accordingly, this matter is ripe for adjudication.

## II. *Analysis*

### A. *Section 1322(b)(5) Versus Contractual Reinstatement*

■ Section 1322(b)(5) allows a chapter 13 debtor to cure defaults on long-term debts and maintain ongoing payments. Specifically, a debtor's chapter 13 plan may:

provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

11 U.S.C. § 1322(b)(5). Parties must look to § 1322(e), however, to determine the *amount* necessary to cure a default under § 1322(b)(5). Section 1322(e) provides that "if it is proposed in a plan to cure a default, the amount necessary to cure a default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." 11 U.S.C. § 1322(e). Section 1322(e) prescribes a two part process.

First, as a threshold matter, the amount necessary to cure must be in accordance with the parties' agreement. Second, the amount sought to be included must not otherwise be forbidden by applicable, non-bankruptcy law. Section 1322(e) does not provide for the inclusion of an item in an arrearage claim that would be permitted under applicable non-bankruptcy law that was not included in the underlying agreement.

*In re Tudor*, 342 B.R. at 551 (internal quotation marks and citations omitted).

Sharefax contends that paragraph 18 of the Mortgage and the Ohio Supreme Court's decision in *Wilborn* support Sharefax's position that prepetition attorney fees are properly recoverable in this case. Paragraph 18 of the Mortgage reads as follows (the *"Reinstatement Provision"*):

---

2005).

5. *Davidson v. Weltman, Weinberg & Reis*, 285 F.Supp.2d 1093 (S.D.Ohio 2003).

6. *Wash. Mut. Bank v. Mahaffey*, 154 Ohio App.3d 44, 796 N.E.2d 39 (Ohio Ct.App. 2003).

7. *Deutsche Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460 (6th Cir.2010).

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

■ Addressing the enforceability of a similar reinstatement provision in a residential-mortgage, the Ohio Supreme Court in *Wilborn* held that:

A provision in a residential-mortgage contract requiring a defaulting borrower to pay a lender's reasonable attorney fees as a condition of terminating pending lender-initiated foreclosure proceedings on a defaulted loan and reinstating the loan is not contrary to Ohio statutory or decisional law or against Ohio public policy.

*Wilborn*, 906 N.E.2d at 398 (syllabus), (citations omitted). Accordingly, Sharefax argues that it is entitled to include prepetition attorney fees in the amount required to cure the default under the Mortgage pursuant to § 1322(e) because the Reinstatement Provision provides for recovery of attorney fees and Ohio law permits recovery of attorney fees under a contract provision for reinstatement of a defaulted mortgage.

■ Sharefax's position, however, assumes that the Reinstatement Provision in the Mortgage is applicable to this case. Facing a similar argument, the bankruptcy court in *In re Tudor* held that "the Reinstatement Provision was not triggered here because the Debtor did not actually invoke his contractual right of mortgage reinstatement. Instead, he chose—by filing a Chapter 13 case—to utilize the statutory cure mechanism provided by § 1322(b)(5) of the Code." *In re Tudor*, 342 B.R. at 549–50. Citing to numerous cases for support, the *Tudor* court found that there is a considerable economic difference between a contractual reinstatement provision and the statutory cure and maintain remedy provided by § 1322(b)(5), namely that contractual reinstatement requires a debtor to pay the full arrearage immediately while the statutory remedy under the Bankruptcy Code allows a debtor to cure any default over a reasonable period of time. *Id.* at 564–66.

Sharefax dismisses this difference as being immaterial. It argues that "[a]lthough 1322(b)(5) provides the Debtor the luxury [of] restructuring the arrearage payments, the Debtor does not have the luxury of recalculating the amount of the arrearage." Sharefax maintains that the distinction the *Tudor* court made between contractual reinstatement and statutory reinstatement is not relevant to the *amount* of the arrearage, which is deter-

mined by the underlying agreement and Ohio law pursuant to § 1322(e). Sharefax's argument begs the question.

While not addressing § 1322(b)(5), the Ohio Supreme Court's opinion in *Wilborn* is instructive on the dichotomy between statutory rights and contract rights. In *Wilborn*, the Ohio Supreme Court acknowledged that there are a number of rights available to debtors as legal protections against foreclosure. *Wilborn*, 906 N.E.2d at 402. The court expressly highlighted the distinction between two such rights—the statutory right of redemption and the contractual right of reinstatement.

> [R]edemption [is] an absolute right that allows the defaulting borrower to redeem the property even after its public sale (but before confirmation) and to thereby terminate the lender's foreclosure proceedings.... The foreclosure proceeding is the enforcement of a debt obligation, and in that situation, the rule against paying another party's attorney fees ... well applies.

> Reinstatement, however, differs from redemption. A defaulting borrower is not entitled by law to have a mortgage loan reinstated.

*Id.* Section 1322(b)(5), like state law redemption, is a right that a chapter 13 bankruptcy debtor is *entitled to by law*, separate and apart from any contractual right of reinstatement. Section 1322(e) does not nullify this right. While § 1322(e) directs the court to the underlying agreement and nonbankruptcy law to determine the *amount* necessary to cure a default, it does not direct the court to look to the underlying agreement and nonbankruptcy law to determine the *right* to reinstatement itself.

*Wilborn* makes clear that a debtor may select from "a number of mechanisms and processes intended as legal protection for the debtor" when faced with foreclosure. *Id.* The Debtor in this case elected to pursue his bankruptcy right to cure and maintain his mortgage under § 1322(b)(5) and not under the Restatement Provision in his Mortgage. Accordingly, the Restatement Provision does not provide a basis for Sharefax's claim for attorney fees as part of its prepetition arrearage claim because it is not operative in this case. Sharefax does not argue that any other provision in the Mortgage supports its claim for attorney fees. As such, Sharefax has not met the two-part requirement of § 1322(e); [8] therefore, there is no basis for allowing attorney fees as part of Sharefax's prepetition arrearage claim.

For the foregoing reasons:

A. The Trustee's claim objection is SUSTAINED. Sharefax's claim for attorney fees in the amount of $27,083.00 is disallowed and Sharefax's prepetition arrearage claim is hereby reduced to $47,942.79.

B. Sharefax's objection to confirmation of the Debtor's Plan is OVERRULED to the extent that it relates to the amount of Sharefax's prepetition arrearage claim.

---

8. For this same reason, this Court does not need to address the parties' arguments regarding whether *Wilborn* affects the *Lake/Landrum* line of cases holding that all attorney fee provisions in debt instruments are void, the impact of the reinstatement exception to the American Rule under *Wilborn/Davidson/Mahaffey* or the equal bargaining power exception to the American Rule. To the extent that Sharefax relies on *Deutsche* *Bank Nat'l Trust Co. v. Tucker*, 621 F.3d 460 (6th Cir.2010) in support of its claim for attorney fees, this Court finds *Tucker* distinguishable. The issue in *Tucker* was whether § 506(b) prevented an undersecured creditor from recovering interest, fees and costs under § 1322(e). The issue of whether the underlying agreement provided for recovery of attorney fees was not in question.

C. This matter will be set for further hearing by separate order as it relates to Sharefax's alternative objection to confirmation regarding feasibility.

IT IS SO ORDERED.